# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8200 and 00 C 1048 | **DATE** | 11/8/2000 |
| **CASE TITLE** | Oxford Commercial Funding, LLC vs. Restaurant Teams International, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for turnover [28-1] is granted only as to certain assets identified in the attached Memorandum Opinion and Order. Plaintiff is ordered to reply in writing to defendants' objections as to the remaining assets on or before 11/13/00. The hearing date set for 11/22/00 before Judge Gottschall at 10:30 a.m. is stricken. The contempt hearing date set for 11/29/00 before Judge Gottschall at 10:15 a.m. to stand. The original Memorandum Opinion and Order is filed in Case No. 99 C 8200.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | NOV 09 2000 date docketed | |
| ✓ | Docketing to mail notices. | | 10 |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING docketing deputy initials | |
| | Copy to judge/magistrate judge. | 00 NOV -8 PM 6:02 | |
| | courtroom deputy's initials | | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OXFORD COMMERCIAL FUNDING, LLC.,
an Illinois Limited Liability Company,

    Plaintiff,

v.

RESTAURANT TEAMS INTERNATIONAL,
INC., a Texas corporation, STANLEY
SWANSON, an individual and citizen of Texas,
CURTIS SWANSON, an individual and citizen
of Texas, and CAROL SWANSON, an
individual and citizen of Texas,

    Defendants.

No. 99 C 8200 and 00 C 1048

Judge Joan B. Gottschall

DOCKETED
NOV 0 9 2000

## MEMORANDUM OPINION AND ORDER

### Background

The following facts are derived from the documents filed in this litigation to date, the statements of counsel, and all other pertinent matters made known to the court in connection with these proceedings:

On September 19, 2000, Plaintiff and Judgment-Creditor, Oxford Commercial Funding, LLC filed in the captioned litigation "Plaintiff's Motion for Turnover and Issuance of Rule to Show Cause Against RTIN, Curtis Swanson, and Stanley Swanson." On September 25, 2000, counsel for Defendants Stanley L. Swanson, Curtis Swanson and Restaurant Teams International, Inc. ("RTIN"), advised the court that he would be seeking to withdraw his appearance as counsel to Defendants and cease representing Defendants in this litigation. Based on that representation, the court continued the Motion to October 10, 2000.

On October 10, 2000, the court entered an order granting Defendants' counsel leave to

withdraw. At that time, the Court also stated that Plaintiff could present to the court a draft order granting the Motion for Turnover and Plaintiff could advise Defendants that the draft order would be entered at the next scheduled hearing on this matter, which would take place on October 25, 2000, if Defendants did not contest satisfactorily the entry thereof.

On October 26, 2000, the court granted Defendants an additional, limited extension of time to respond to the Motion for Turnover, based on Defendants' representation to the court that Curtis Swanson, the chief financial officer of RTIN, was scheduled for major back surgery on October 24, 2000. On November 2, 2000, the Defendants submitted to the court an affidavit of Curtis Swanson objecting to the motion for turnover. The Defendants' objections varied as to each asset. The court finds that some of the objections raised by Defendants could prevent the turnover of certain assets, while others could not. Therefore, Oxford's motion for turnover is granted only as to certain assets, which are identified below. As to the remaining assets, the court declines to order immediate turnover and orders that Oxford submit a written reply to Defendants' objections, addressing the concerns noted in this memorandum opinion and order.

## Analysis

The plaintiff's motion for turnover is based on Section 2-1402 of the Illinois Code of Civil Procedure, which provides that:

> When assets or income of the judgment debtor not exempt from the satisfaction of a judgment, a deduction order or garnishment are discovered, the court may, by appropriate order or judgment: (1) compel the judgment debtor to deliver up, to be applied in satisfaction of the judgment, in whole or in part, money, choses in action, property or effects in his or her possession or control, so discovered, capable of delivery and to which his or her title or right of possession is not substantially disputed. . . .

735 ILCS 5/1402(c).

2

1. The first asset at issue is 1000 shares of stock in Regulatory Solutions, Inc. held by RTIN. In the November 2 affidavit, Curtis Swanson admits that the company is in possession of this asset, but objects to the turnover of this asset because the shares are subject to pending litigation. In the litigation, RSI's principles are seeking to rescind RTIN's acquisition of the stock. It is at least arguable that this pending litigation renders RTIN's title or right of possession of the stock "substantially disputed" under Section 1402. Therefore, the court declines to order immediate turnover of this asset.

2. The second asset is "all cash and other liquid property in [RTIN's] possession." (Plaintiff's Proposed Order at 2). Curtis Swanson's affidavit states that any cash in RTIN would be minimal and would be delivered as ordered. Since the delivery of cash and liquid property in RTIN's possession clearly can be compelled under Section 1402, the court orders RTIN to deliver such cash and liquid property to Plaintiff by overnight delivery in the form of one or more cashier's or certified checks issued to the order of Plaintiff and drawn on the account(s) in which RTIN maintains funds. This asset is to be applied in satisfaction of the judgment.

3. The third group of assets includes three lease agreements. RTIN contends that two of the leases, George Levy and Emerald Mist, are assigned to senior lenders. RTIN further contends that the Raneri's Italian Restaurant lease was foreclosed upon by a senior lender on October 5, 2000. If RTIN is not in possession of these leases, then turnover may not be ordered under Section 1402. Furthermore, if there are lien creditors who may have a claim on the property subject to the motion for turnover, those creditors must be given notice and an opportunity to be present at a hearing to determine the relative rights of the plaintiff and the other creditors.

Section 1402(g) provides: "If it appears that any property, chose in action, credit or effect discovered, or any interest therein, is claimed by any person, the court shall, as in garnishment proceedings, permit or require the claimant to appear and maintain his or her right. The rights of the person cited and the rights of any adverse claimant shall be asserted and determined pursuant to the law relating to garnishment proceedings." 735 ILCS 5/2-1402(g). In *Schwartz v. Yo-Whip, Inc.*, Judge Lefkow stated, "This provision plainly entitles lien holders to assert their rights before a turnover order is entered." No. 92 C 2586, 1994 WL 201024 at *3 (N.D. Ill. May 18, 1994) (discussing an earlier version of Section 1402(g) which was substantially the same in all relevant respects). In *Schwartz*, the court ordered that the plaintiff notify all lien holders of the proceedings in order to present them with the opportunity to appear and assert their rights. *See id.* In light of RTIN's suggestion that RTIN no longer owns the leases, or that the leases are subject to liens having priority over Oxford's judgment lien, the court declines to order immediate turnover of the leases.

4. The fourth group of assets includes "all assets owned by the Tanners Restaurant chain." (Plaintiff's Proposed Order at 2). Swanson's affidavit states that these assets are "100% owned by RTOSF a wholly owned subsidiary of RTIN." (Swanson Aff. at 2). The affidavit further alleges that the RTOSF stock and all assets in Tanner's are pledged to Sovereign Partners and Canadian Advantage Limited Partnership, which holds liens on the RTOSF stock and Tanners assets. According to Section 1402(g), and *Schwartz*, the court may not issue the turnover order as to this asset without giving the lienholder notice and an opportunity to appear. Therefore, the court declines to order the immediate turnover of this group of assets.

5. The fifth asset is a potential claim RTIN has against Fatburger, Inc. RTIN objects to

4

the assignment of its potential claim against Fatburger, arguing that only officers of RTIN have knowledge to bring the action. This potential claim, however, is a "chose in action" subject to turnover under Section 1402(c)(1). *See North Dakota Mill & Elevator Ass'n v. National Flour Co.*, No. 90 C 0744, 1992 WL 81325, at *1 (N.D. Ill. April 10, 1992) (citing Black's Law Dictionary definition of choses in action: "a personal right not reduced into possession, but recoverable by a suit at law" (Rev. 4th ed. 1968)). Furthermore, Section 1402(c)(6) permits a judgment creditor to "maintain an action against any person or corporation that, it appears upon proof satisfactory to the court, is indebted to the judgment debtor, for the recovery of the debt . . ." and allows the court to "direct that the papers or proof in the possession or control of the debtor and necessary in the prosecution of the action be delivered to the creditor . . . ." 735 ILCS 5/1-1402(c)(6).

RTIN also objects to the assignment of this asset to Plaintiff because "there can be no measured set off against the judgment." (C. Swanson Aff. at 2). The Illinois supplementary proceedings statute, however, does not except assets from turnover simply because the defendant might have a right of set off against the plaintiff. Any amount recovered in the Fatburger claim is to be applied towards Oxford's judgment against RTIN only to the extent that it is necessary to satisfy that judgment. Hence, the court orders RTIN to immediately assign and deliver to Plaintiff RTIN's right, title and interest in any causes of action, choses of action, claims, suits and rights existing in favor of RTIN against Fatburger, Inc. or any entity presently or in the past related to Fatburger, Inc., and to deliver to Plaintiff any papers or proof necessary to the prosecution of that action. The proceeds of this asset are to be applied in satisfaction of the judgment to the extent that the cash and liquid property described above are insufficient to satisfy

the judgment.

6. The sixth asset is a claim RTIN has filed against MG Securities. RTIN makes the same objections to the turnover of this asset as it made with respect to the Fatburger claim. For the reasons identified above, the court orders RTIN to immediately assign and deliver to Plaintiff RTIN's right, title and interest in any causes of action, choses of action, claims, suits and rights existing in favor of RTIN against the entity identified in the Motion as MG Securities, and to deliver to Plaintiff any papers or proof necessary to the prosecution of that action. The proceeds of this asset are to be applied in satisfaction of the judgment to the extent that the cash, liquid property, and claims described above are insufficient to satisfy the judgment.

7. The seventh asset belongs to defendant Curtis Swanson. Plaintiff seeks turnover of all of Curtis Swanson's "rights title and interest in and to any causes of actions, choses in action, claims, suits and rights existing in his favor against Community State Bank for 'violation of the Bank Tying Act.'" (Plaintiff's Proposed Order at 3). Again, Swanson objects to this assignment because only he has knowledge of the facts of the case. For the reasons identified above, the court orders Curtis Swanson to immediately assign and deliver to Plaintiff his right, title and interest in any causes of action, choses of action, claims, suits and rights existing in his favor against Community State Bank for violation of the Bank Tying Act, and to deliver to Plaintiff any papers or proof necessary to the prosecution of that action. The proceeds of this asset are to be applied in satisfaction of the judgment to the extent that the cash, liquid property, and claims described above are insufficient to satisfy the judgment.

8. The eighth asset is Stanley Swanson's interest in stock of RTIN. Curtis Swanson's affidavit states that all of Stanley Swanson's stock in RTIN has been transferred to registry of the

court in connection with litigation between the Swansons, May Financial, and Deutsche Financial. Based on this representation, the stock is arguably not "capable of delivery" and the title to the stock is "substantially disputed" under Section 1402. Therefore, the court declines to order immediate turnover of this asset.

To the fullest extent necessary, this Order shall constitute an instrument enabling and authorizing Plaintiff to transfer all right, title and interest in and to the choses in action identified herein to any entity who purchases such assets pursuant to a sale thereof conducted upon 10 days notice. Any sale conducted in accordance with the Uniform Commercial Code as enacted in Illinois shall be deemed commercially reasonable.

Oxford may reply in writing to the objections raised in Curtis Swanson's affidavit that this court has found sufficient to preclude immediate turnover. Such written reply must be supported by citations to the record or relevant legal authority, and is to be submitted to the court on or before November 13, 2000.

ENTER:

_____
Joan B. Gottschall
United States District Judge

DATE: November 8, 2000